IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| YANIESHA HENDKING, | ) CASE NO. 1:22-CV-01777-JPC |
| Plaintiff, | ) |
| | ) JUDGE J. PHILIP CALABRESE |
| vs. | ) |
| | ) MAGISTRATE JUDGE |
| CARVANA LLC, *et al*, | ) JONATHAN D. GREENBERG |
| Defendants. | ) **REPORT & RECOMMENDATION** |
| | ) **(DOC. NO. 5) AND MEMORANDUM** |
| | ) **OPINION & ORDER (DOC. NOS. 6, 7, 10,** |
| | ) **12, 13, 19)** |

This matter is before the magistrate judge pursuant to Local Rule 72.1. Before the Court is Defendants' Motion to Compel Arbitration. (Doc. No. 5.) For the following reasons, the undersigned recommends the Court GRANT Defendants' motion to compel arbitration and dismiss this case without prejudice. The pending motions at Doc. Nos. 6, 7, 10, 12, 13, and 19 are DENIED AS MOOT.

### I.     Background

In an Amended Petition for Special Emergency Injunction for Equitable Relief Permanently From Trespassing and Abusive Harassment/Breach of Trust/Contract, Plaintiff asserted claims against the Defendants stemming from an automobile purchase on June 15, 2021. (Doc. No. 1-1 at 8-12.) Plaintiff alleged violations of the Truth in Lending Act ("TILA"), that Carvana failed to provide her with the registration for her car in a "timely legal fashion," that Carvana was not and is not the title owner to the vehicle, breach of trust/contract by Carvana, that Carvana "extorted a cash down payment of two thousand dollars by false and misleading comments within a credit sale," that Carvana "fraudulently turned a credit sale into a loan," and estoppel. (*Id.* at 8-11.) Plaintiff asserts the vehicle at issue, a 2018 Mercedes Benz

GLC, now "lawfully vests with [her]." (*Id.* at 11.) The state court determined the petition did not establish a right to immediate relief and that the case was "to proceed in the normal course." (*Id.* at 14.)

On October 4, 2022, Defendants removed this case to federal court. (Doc. No. 1.) On October 11, 2022, Defendants filed a Motion to Compel Arbitration. (Doc. No. 5.) In their motion, Defendants assert the Retail Purchase Agreement ("RPA") Plaintiff signed for the purchase of a 2018 Mercedes Benz GLC incorporated by reference an arbitration agreement ("Arbitration Agreement"), "which broadly obligates the parties to arbitrate disputes arising out of or relating to the RPA, the Security Agreement, the Vehicle, and/or the sale and financing of the Vehicle." (*Id.* at 1.) Defendants request the Court "order Plaintiff to submit all causes of action asserted" in the Amended Petition filed in state court to arbitration and dismiss this case, or, in the alternative, stay this case pending arbitration. (*Id.* at 2.) In support of their motion, Defendants filed the affidavit of a Carvana LLC employee, the Retail Purchase Agreement, a Security Agreement, the Arbitration Agreement, and a "Special Power of Attorney" form. (Doc. Nos. 5-2, 5-3, 5-4, 5-5, and 5-6.)

That same day, Defendants filed a motion for leave to file an answer or other responsive pleading. (Doc. No. 6.) In this motion, Defendants sought leave to file an answer or other responsive pleading, if necessary, within fourteen days after the Court's ruling on Defendants' motion to compel arbitration. (*Id.*)

On October 18, 2022, Plaintiff filed her opposition to the motion to compel, stating she alleged "Defendants and pending subpoenaed Defendants have committed practices that are deceptive, unfair, fraudulent and forced me to act under overwhelming amounts of stress, embarrassment, anxiety, and duress with their breaches, trespass, violations, and threats to my livelihood" and denied any "actual valid arbitration agreement" existed between her and Defendants. (Doc. No. 8.)

That same day, Plaintiff also filed a Motion to Compel Discovery of Inculpatory Evidence. (Doc. No. 7.) In this motion, Plaintiff asserted no arbitration agreement existed for the 2018 Mercedes Benz GLC. (*Id.*) Plaintiff argued:

2

> An electronic copy is not sufficient to prove the action was consented to by the Plaintiff as anyone could manipulate and forge an electronic copy for their own benefit which is a deceptive and fraudulent act. It is imperative that this court compel Defendant(s) to provide the physical true and original document bearing a wet ink signature from the Plaintiff consenting to an arbitration agreement they claim exist. If Defendant(s) can produce from compelling send the original document to this court for Judge J. Phillip Calabrese's reviewing by registered mail in chambers with the Plaintiff.

(*Id.*)

Also on October 18, 2022, Plaintiff filed a motion to add additional defendants and an amended complaint, as well as an "Opposition to Motion for Leave to Remove Defendant Kaylie." (Doc. Nos. 9-11.)

On October 24, 2022, Plaintiff filed an amended motion to add additional defendants and a motion for permission to file electronically. (Doc. Nos. 12-13.)

On October 26, 2022, Defendants filed a reply in support of their motion to compel arbitration, along with a supplemental affidavit and a DocuSign Certificate of Completion. (Doc. No. 14.) That same day, Defendants also filed a reply in support of their motion for leave to file an answer or other responsive pleading. (Doc. No. 15.)

On October 31, 2022, Plaintiff filed a response to Defendants' reply in support of the motion to compel, as well as a response in support of opposition to remove defendant Kaylie and a second amended complaint with 46 exhibits. (Doc. Nos. 16-18.) In her response to Defendants' reply in support of the motion to compel arbitration, Plaintiff again denied that there was an arbitration agreement in place for the 2018 Mercedes Benz GLC and argued the Arbitration Agreement was "false." (Doc. No. 16 at 1.) Plaintiff maintains the DocuSign Certificate of Completion does not show she was "invited to review any documents" and asserts "that an employee of Carvana which likely may be Daidre Visser have forged Plaintiffs [sic] electronic signature without consent given from Plaintiffs [sic] wet ink signature." (*Id.* at 1-2.) Plaintiff also cites to one of the 46 exhibits filed with her second amended complaint and states:

3

> Plaintiff honorably requests this honorable court to acknowledge the IP address on the DocuSign Certificate of Completion defendants submitted. Notice Plaintiff exhibit 44 which contains the IP address location coordinates. Plaintiff was in care of Henderson Nevada. The coordinates are at the Carvana hub at 3720 Morgan Cashman's Way Las Vegas 89111. This proves Plaintiff did not participate in this electronic signing transaction within DocuSign and this shows improper, fraudulent, deceptive conduct by Carvana and Defendants' motion to compel arbitration should not be granted and must be denied expeditiously so that Plaintiff can move pass this over a year long heavy burden and grief with the Defendants.

(Doc. No. 16 at 2.)

On November 2, 2022, Defendants filed a Motion to Stay, or in the Alternative, Motion for Conference/Hearing to Address Pending Motions and Other Filings. (Doc. No. 19.)

## II.     Law and Analysis

As the Sixth Circuit has explained:

> A written agreement to arbitrate disputes arising out of a transaction in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. To enforce this dictate, the Federal Arbitration Act (FAA) provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement. 9 U.S.C. §§ 3 and 4. The district court's decision whether to compel arbitration under the FAA is reviewed *de novo. Burden v. Check Into Cash, LLC,* 267 F.3d 483, 487 (6th Cir. 2001), *cert. denied,* 535 U.S. 970, 122 S.Ct. 1436, 152 L.Ed.2d 380 (2002).
>
> Manifesting a "liberal federal policy favoring arbitration agreements," the FAA "is at bottom a policy guaranteeing the enforcement of private contractual arrangements." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement. *See AT & T Techs. v. Communications Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to

arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

*Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

In considering a motion to compel arbitration a court first "must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). The crux of the parties' dispute in this case is whether there is an agreement to arbitrate.

As this Court recently explained:

> Like on summary judgment, the moving party bears the initial *prima facie* burden of showing the existence of an agreement to arbitrate. *See Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *Denton v. Allenbrooke Nursing & Rehab. Ctr., LLC*, 495 F.Supp.3d 601, 607–08 (W.D. Tenn. 2020). Then, the non-movant "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth*, 288 F.3d at 889. If the validity of the agreement to arbitrate is "not 'in issue', [courts] must compel arbitration." *Id.* (citing 9 U.S.C. § 4). Thus, viewing the facts in a light most favorable to Rowe, I must determine "whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Danley v. Encore Capital Grp., Inc.*, 680 F. App'x 394, 397 (6th Cir. 2017) (unpublished) (quoting *Great Earth*, 288 F.3d at 889).

*Rowe v. ZF N. America, Inc.*, Case No. 3:20-CV-1296, 2021 WL 3036787, *2 (N.D. Ohio July 19, 2021). Plaintiff bears "the burden of showing, with evidentiary support, that an arbitration agreement is invalid." *Fox v. TransUnion, LLC*, Case No. 1:17-cv-362, 2018 WL 5313453, at *3 (S.D. Ohio Oct. 26, 2018). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

5

### A. Agreement to Arbitrate

"In determining whether the parties formed a valid arbitration agreement, 'state law may be applied if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally, although the FAA preempts state laws applicable to only arbitration provisions.'" *Price v. Taylor*, 575 F. Supp. 2d 845, 851 (N.D. Ohio 2008) (quoting *Great Earth Cos. v. Simons,* 288 F.3d 878, 889 (6th Cir. 2002)). Contract defenses "generally available under state law, such as fraud and forgery, may invalidate arbitration agreements." *Chambers v. Sun West Mortg., Co., Inc.*, Case No. 1:13-cv-399, 2014 WL 2211015, at *3 (S.D. Ohio May 28, 2014) (citations omitted). "However, in applying state law principles in this context, the federal policy favoring arbitration is taken into consideration." *Id.* (citations omitted). Any contract ambiguities or doubts regarding the intentions of the parties "'should be resolved in favor of arbitration.'" *Id.* (quoting *Stout*, 228 F.3d at 714).

Construing the facts in a light most favorable to Plaintiff, the evidence presented is not such that a reasonable finder of fact could conclude that no valid arbitration agreement exists. First, regarding Plaintiff's claims that she did not sign the Arbitration Agreement and certain webpages she provided relating to IP addresses "show[] improper, fraudulent, deceptive conduct" by the Defendants regarding the Arbitration Agreement, these webpages do not refute the evidence provided by Defendants regarding Plaintiff's e-signature on the Arbitration Agreement. First, these webpages are dated October 13, 2022, and Plaintiff presents no evidence that they relate back to June 15, 2021, the date the Arbitration Agreement was signed. Even if the information on these webpages relates back to June 15, 2021, and even if the coordinates are accurate, and even if the coordinates are the location of a Carvana hub, the DocuSign Certificate of Completion shows Plaintiff viewed the documents and states Plaintiff "[s]igned using mobile." (Doc. No. 14-2.) Therefore, the evidence in these webpages, even with all reasonable inferences drawn in Plaintiff's favor, do not create a genuine issue of material fact regarding the validity of the Arbitration Agreement.

Furthermore, Plaintiff's assertions regarding the invalidity of her signature[1] are undercut by the signed, sworn, and notarized "Special Power of Attorney" form she executed on March 14, 2022, which states in pertinent part: "Furthermore, I Yaniesha Hendking give writing [sic] notice to you CARVANA, LLC and its agents, representatives and or authorized members that I also REVOKE any Arbitration Provision Agreements that was held on this consumer credit transaction as of the date of receiving this notice." (Doc. No. 5-6.) Furthermore, Plaintiff does not dispute her signature on the RPA, which incorporates the Arbitration Agreement by reference, or the Security Agreement, and Plaintiff admits she has used and continues to retain the 2018 Mercedes Benz GLC.

Second, to the extent Plaintiff challenges the validity of the Arbitration Agreement because her signature is an electronic signature and not a "wet ink" signature, state law provides that a signature "shall not be denied legal effect or enforceability solely because it is in electronic form." Ga. Code Ann. § 10-12-7(a).[2] Furthermore, the Security Agreement states, next to a checked box:

> If checked, you agree to use electronic records and electronic signatures to document this contract. Your electronic signatures on electronic records will have the same effect as signatures on paper documents. We may designate one authoritative copy of this contract. If we do, the authoritative copy will be the electronic copy in a document management system we designate for storing authoritative copies. We may convert the authoritative copy to a paper original. We will do so by printing one paper copy marked "Original." This paper original

---

[1] This includes Plaintiff's unsupported assertion that because she "reads contracts before signing them which takes time," the fact that the documents at issue were signed "within thirty four seconds" means Defendants are "lying" about the validity of her signature. (Doc. No. 16 at 2.) *See Hill Phoenix, Inc. v. Classic Refrigeration SoCal, Inc.*, Case No. 8:19-cv-00695-DOC-JDE, 2020 WL 1244354, at *3 (C.D. Cal. Mar. 15, 2020) ("A party cannot create a genuine issue of material fact simply by making assertions in its legal papers . . . Rather, there must be specific, admissible evidence identifying the basis for the dispute . . . The Court need not 'comb the record' looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein.")

[2] The RPA and the Security Agreement provide for the application of Georgia law. (Doc. Nos. 5-3, 5-4.) However, the analysis remains the same whether Ohio or Nevada law is applied instead. N.R.S. § 719.240(1) ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form."); O.R.C. § 1306.06 ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.").

7

>will have your electronic signature on it. It will have the same effect as if you had signed it originally on paper. If you agree to use electronic records and electronic signatures, we will comply with all applicable federal, state and local law and regulations.

(Doc. No. 5-4 at 3.)

Finally, Plaintiff's purported recission of her agreements with Carvana under TILA does not render the Arbitration Agreement unenforceable. *Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, 563 (N.D. Ohio 2004) ("Where a consumer's claim of recission is not effective unless, and until, a decisionmaker rules upon it, arbitration clauses or agreements remain enforceable. It becomes the province of the arbitrator, accordingly, to decide whether the predicates for recission under TILA have been satisfied.")

### B. Scope of the Arbitration Agreement

"In determining whether claims are within the arbitration agreement's scope, the strong federal policy for arbitration demands that 'any ambiguities or doubts as to the parties' intentions … be resolved in favor of arbitration.'" *Price*, 575 F. Supp. 2d at 851 (quoting *Stout*, 228 F.3d at 714). The Arbitration Agreement provides, in pertinent part, as follows:

>"Claim" means any claim, dispute our [sic] controversy between you and us arising from or related to one or more of the following:
>
>(a)    The Contract.
>
>(b)    The vehicle or the sale of the vehicle.
>
>(c)    The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle.
>
>(d)    The relationships resulting from the Contract.
>
>(e)    Advertisements, promotions or oral or written statements related to the Contract.
>
>(f)    The financing terms.
>
>(g)    Your credit applications.

  (h)  The origination and servicing of the Contract.

  (i)  The collection of amounts you owe us.

  (j)  Any repossession, or replevin, of the vehicle.

  (k)  Your personal information.

  (l)  The rescission or termination of the Contract.

"Claim" has the broadest reasonable meaning. It includes claims of every kind of nature. This includes initial claims, counterclaims, cross-claims, third-party claims, statutory claims, contract claims, negligence and tort claims (including claims of fraud and other intentional torts). However, notwithstanding any language in this Agreement to the contrary, a "Claim" does not include a dispute about validity, enforceability, coverage or scope of this Agreement (including, without limitation, the paragraph below captioned "No Class Actions or Private Attorney General Actions," the final sentence under the paragraph below captioned "Miscellaneous" and/or this sentence); any such dispute is for a court, and not an arbitrator to decide. This exclusion from the definition of a "Claim" does not apply to any dispute or argument that concerns the validity or enforceability of the Contract as a whole; any such dispute or argument is for the arbitrator, not a court, to decide.

Even if you and we elect to litigate a Claim in court, you or we may elect to arbitrate any other Claim, including a new Claim in that lawsuit or any other lawsuit. Nothing in that litigation waives any rights in this Agreement.

However, notwithstanding any language in this Agreement to the contrary, the term "Claim" does not include (i) any self-help remedy, such as repossession or sale of any collateral given by you to us as security for repayment of amounts owed by you under the Contract; or (ii) any individual action in court by one party that is limited to preventing the other party from using such self-help remedy and that does not involve a request for damages or monetary relief of any kind. Also, we will not require arbitration of any individual Claim you make in small claims court or your state's equivalent court, if any. If, however, you or we transfer or appeal the Claim to a different court, we reserve our right to elect arbitration.

(Doc. No. 5-5 at 2.) The Arbitration Agreement defines "Us/We/Our" as "Carvana, any purchaser, assignee or servicer of the Contract, all of their parent companies, and all subsidiaries, affiliates, predecessors and successors, and all officers, directors and employees of any of the forgoing. 'Us/We/Our' also means any third party providing any product or service in connection with or incidental to the Contract, the sale of the

9

vehicle and/or other goods or services covered by the Contract and/or related to the vehicle, if such third party is named as a co-defendant with us in a Claim you assert." (*Id.* at 1.) The Arbitration Agreement defines "Contract" as "the Retail Purchase Agreement (in Texas, the Buyer's Order) and/or the related Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) you signed with us in connection with this purchase, and any prior Retail Purchase Agreement (in Texas, Buyer's Order) and/or Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) that you previously had with us." (*Id.*)

Plaintiff does not dispute that the claims at issue fall within the broad scope of the definition of "Claim" subject to the Arbitration Agreement. Indeed, Plaintiff's claims fall under one or more categories of "Claim" as defined under the Arbitration Agreement. Therefore, the undersigned concludes that Plaintiff's claims fall within the scope of the Arbitration Agreement.

### C. Arbitrability of Federal Statutory Claims

Plaintiff makes no argument that Congress intended for TILA claims to be non-arbitrable. Further, this Court has previously found TILA claims to be arbitrable. *See Willis v. Setjo, LLC*, Case No. 1:17 CV 2446, 2018 WL 4210140, at **3-4 (N.D. Ohio Sept. 4, 2018); *Anderson*, 316 F. Supp. 2d at 562-68.

### D. Whether to Stay Proceedings Pending Arbitration

As this Court explained earlier this year:

> If the Court, as it has done here, concludes that Plaintiff's claims are subject to arbitration, then the Court may dismiss the action or, if requested by a party, stay the action. The FAA "instructs that 'upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration,' the court 'shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.'" *Hilton v. Midland Funding, LLC*, 687 Fed.Appx. 515, 518 (6th Cir. 2017) (quoting 9 U.S.C. § 3). "Given [the Court's] ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose." *Green v. Ameritech Corp.*, 200 F.3d 967, 973

(6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). Plaintiff's claim against Defendants is subject to binding arbitration. Accordingly, the Court's retention of jurisdiction during the pendency of arbitration would serve no purpose, and dismissal is the appropriate remedy. *See Arnold*, 920 F.2d at 1276; *Milan Exp. Co. v. Applied Underwriters Captive Risk Assur. Co.*, 590 F. App'x 482, 486 (6th Cir. 2014) (recognizing authority of district courts to dismiss actions if all claims stem from disputes arising under an arbitration agreement).

*Shade v. Cracker Barrel Old Country Store, Inc.*, No. 4:21CV1049, 2022 WL 824144, at *3 (N.D. Ohio Mar. 18, 2022). Because Plaintiff's claims all fall within the scope of the Arbitration Agreement, staying the case serves no purpose and dismissal is the appropriate remedy. Therefore, the undersigned recommends Plaintiff's claims be dismissed without prejudice. *See Rowe*, 2021 WL 3036787, at **6-7; *Willis*, 2018 WL 4210140, at *4.

### III. Conclusion

For all the reasons set forth above, the undersigned recommends the Court GRANT Defendants' motion to compel arbitration (Doc. No. 5) and dismiss this case without prejudice. The pending motions at Doc. Nos. 6, 7, 10, 12, 13, and 19 are DENIED AS MOOT.

Date: November 3, 2022

                                             *s/ Jonathan Greenberg*
                                             Jonathan D. Greenberg
                                             United States Magistrate Judge

### **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**